**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| SHEROD O. J., | ) | NO. CV 18-9507-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

Plaintiff filed a complaint on November 9, 2018, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on January 29, 2019. Plaintiff filed a motion for summary judgment on May 10, 2019. Defendant filed a motion for summary judgment on June 10, 2019. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed November 14, 2018.

///

**BACKGROUND**

Plaintiff asserted disability since June 11, 2015, based on alleged: bipolar disorder with auditory hallucinations; a history of congestive heart failure with non-ischemic cardiomyopathy; glaucoma; and lower back pain (Administrative Record ("A.R.") 351, 449, 477, 484, 511). An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 27-38, 347-68, 382-874).[1] The ALJ found that Plaintiff suffers from severe non-ischemic cardiomyopathy and a history of congestive heart failure which restrict Plaintiff to a limited range of light work (A.R. 31, 34). The ALJ relied on a vocational expert's testimony to find Plaintiff capable of performing jobs existing in significant numbers in the national economy (A.R. 37 (adopting vocational expert's testimony at A.R. 365-66)). The ALJ found Plaintiff not disabled from June 11, 2015 through November 17, 2017 – the date of the ALJ's decision (A.R. 37-38).

Plaintiff then submitted to the Appeals Council additional medical records regarding treatment during the alleged disability period. See A.R. 2; see also A.R. 42-312 (Kedren Community Health Center and Harbor-UCLA records). The Appeals Council declined to "exhibit" these records, finding no reasonable probability that the

---

[1] In response to a previous application for benefits, an ALJ found Plaintiff not disabled through February 22, 2013 (A.R. 372-78). In the present case, a different ALJ found there had been a change in circumstances since the previous decision (Plaintiff's 50th birthday), and so the ALJ did not apply a presumption of continuing non-disability (A.R. 30-31).

evidence would change the outcome of the decision (A.R. 2). The Appeals Council denied review (A.R. 1-4).

Plaintiff stipulates to the ALJ's summary and assessment of the effects of his cardiovascular disease. However, Plaintiff contends that the ALJ erred by finding Plaintiff's alleged mental impairments not severe and by adopting a mental residual functional capacity supposedly not supported by substantial evidence. See Plaintiff's Motion, pp. 4, 8-10.

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

If the evidence can support either outcome, the court may
    not substitute its judgment for that of the ALJ. But the
    Commissioner's decision cannot be affirmed simply by
    isolating a specific quantum of supporting evidence.

>Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

Where, as here, the Appeals Council "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Commissioner, 682 F.3d at 1163. "[A]s a practical matter, the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence considered by that body is evidence upon which the findings and decision complained of are based." Id. (citations and quotations omitted).[2] Thus, this Court has reviewed the evidence submitted for the first time to the Appeals Council.

///
///
///

---

[2] And yet, the Ninth Circuit sometimes had stated that there exists "no jurisdiction to review the Appeals Council's decision denying [the claimant's] request for review." See, e.g., Taylor v. Commissioner, 659 F.3d 1228, 1233 (9th Cir. 2011); but see Smith v. Berryhill, 2019 WL 2257159 (U.S. May 28, 2019) (court has jurisdiction to review Appeals Council's dismissal of request for review as untimely); see also Warner v. Astrue, 859 F. Supp. 2d 1107, 1115 n.10 (C.D. Cal. 2012) (remarking on the seeming irony of reviewing an ALJ's decision in the light of evidence the ALJ never saw).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[3] legal error. Plaintiff's contrary arguments are unavailing.

**I. Substantial Evidence Supports the Conclusion that Plaintiff Can Work.**

Substantial evidence supports the administrative conclusion that Plaintiff can work. Clinical psychologist and consultative examiner, Dr. Rashin D'Angelo, prepared a "Complete Psychiatric Evaluation" dated October 23, 2015 (A.R. 614-18). Dr. D'Angelo reviewed treatment records including progress notes from Kedren Mental Health Center in 2014, which reflected treatment for depression and self-reported auditory hallucinations concerning Plaintiff's deceased father (A.R. 614). In 2014, Plaintiff reportedly complained of feeling stressed, sad and having difficulty sleeping dating back to 2008 when his father died, with symptoms allegedly increasing over the previous year (A.R. 614-15). Plaintiff also reportedly then complained of irritability

///
///
///

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

and mood swings and said he heard voices (A.R. 614-15).[4]  Plaintiff reported a history of alcohol and cocaine abuse and yet claimed that he had stopped using 10 years ago (A.R. 615; but see A.R. 543 (Plaintiff reporting in November of 2013 that he had abstained from cocaine use for only the past six months (i.e., since approximately May of 2013) – supposedly his longest period of sobriety)).  Plaintiff reportedly denied having any "legal history" (A.R. 615; but see A.R. 544 (Plaintiff admitting in November of 2013 that he had four or five prior convictions); A.R. 557 (Plaintiff asserting in March of 2014 that his criminal record prevented him from obtaining employment)).  In 2014, Plaintiff reportedly was taking Risperdal, Zoloft, Remeron and Cogentin (A.R. 615).  Plaintiff said he then was living with his family and doing household chores, maintaining "adequate" self care, and using the bus for transportation (A.R. 616).

On examination by Dr. D'Angelo, however, Plaintiff denied any auditory or visual hallucinations, exhibited an "adequate" memory (i.e., remembering three out of three words in immediate recall, and one out of three words in five minutes), was not able to name the

---

[4]      At the January 14, 2013 hearing on Plaintiff's prior disability application, Plaintiff reported no mental health issues and testified that he had been looking for work as a machinist four months prior to the hearing (A.R. 316-39).  At the August 7, 2017 hearing, Plaintiff testified that, ever since his father died in 2008, Plaintiff has become "real upset and agitated at just little things," which he addressed by going outside for five to 10 minutes for fresh air to clear his head (A.R. 353, 355, 360).  Plaintiff testified he "sometimes" has problems with his social relationships and his condition affects his activity level in that he "can't do too much" (A.R. 353-54).  Plaintiff claimed that, for approximately a year, he had been hearing voices, which are "somewhat" controlled with medication and by Plaintiff telling the voices to stop (A.R. 354-55).

capitals of the United States or California, but had no other noted abnormalities (A.R. 616). Dr. D'Angelo diagnosed depressive disorder, not otherwise specified, and assigned a current Global Assessment of Functioning ("GAF") score of 70 (A.R. 617). See American Psychological Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") 34 (4th Ed. 2000).[5]

Dr. D'Angelo stated, "This is a 50-year-old male who complains of mild depression and insomnia with exaggerated symptoms of psychosis that do not appear to be congruent with clinical presentation" (A.R. 617). Dr. D'Angelo opined that Plaintiff would have "none" to "mild" functional limitations (i.e., Plaintiff would have: (a) no difficulty maintaining composure and even temperament; (b) mild difficulty maintaining social functioning; (c) no impairment in maintaining focus and attention; (d) no difficulty with concentration, persistence and pace; (e) no difficulty understanding, remembering and carrying out short, simplistic instructions; (f) mild difficulty understanding, remembering and carrying out detailed and complex instructions; (g) mild difficulty making simplistic work-related decisions without special supervision; (h) mild difficulty complying with job rules such as safety and attendance; (i) mild difficulty responding to changes in a normal workplace setting; (j) mild difficulty maintaining persistence and pace in a normal workplace setting; (k) mild

---

[5] A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." See DSM, p. 34.

difficulty handling the usual stresses, changes and demands of gainful employment; and (l) mild difficulty interacting with supervisors, coworkers and peers on a consistent basis) (A.R. 617). Dr. D'Angelo opined that, if Plaintiff continued his psychiatric treatment, his symptoms would greatly improve with a "good" prognosis (A.R. 617-18). Dr. D'Angelo also opined that Plaintiff did not appear to have an alcohol or substance abuse related impairment contributing to any of Plaintiff's limitations (A.R. 617).

Under the circumstances of this case, Dr. D'Agnelo's opinion constitutes substantial evidence supporting the ALJ's non-disability determination. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constituted substantial evidence "because it rests on his own independent examination"); see also Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (where an examining physician provides "independent clinical findings that differ from findings of the treating physician, such findings are 'substantial evidence'" to support a disability determination) (citations and internal quotations omitted).

State agency psychologist Dr. Heather Barrons reviewed the record, including Dr. D'Angelo's evaluation, and prepared a Psychiatric Review Technique form dated December 1, 2015 (A.R. 388-90). Dr. Barrons opined that Plaintiff's "affective disorders" are "non severe" (i.e., having no more than a minimal effect on Plaintiff's ability to work), and Dr. Barrons assessed no restriction in the activities of daily living, mild restriction in maintaining social functioning and moderate restriction in maintaining

concentration, persistence and pace, with no episodes of decompensation. See A.R. 388-89; see also Social Security Ruling 85-28 at *3-4 (defining when an impairment is "not severe"); 20 C.F.R. § 416.920a(d)(1) (if a limitation is rated as "none" or "mild," the Administration generally will conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities"). Dr. Barrons' non-examining opinion that Plaintiff's mental impairments are "not severe" further supports the ALJ's denial of disability benefits. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1991).

Dr. Barrons completed a Mental Residual Functional Capacity Assessment opining that Plaintiff is moderately limited in his ability to understand, remember and carry out detailed instructions, but has no other "significant" limitations (i.e., Plaintiff is capable of understanding, remembering and sustaining concentration, pace and persistence for simple routines throughout a normal workday/workweek, is able to accept routine supervision and interact with co-workers, and is capable of public contact and adapting to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations and setting goals independently (A.R. 391-93). To the extent Plaintiff may assert that the ALJ erred by not finding functional capacity limitations for simple routine tasks based on Dr. Barrons' opinion that Plaintiff would have moderate limitations in his ability to understand, remember and carry out detailed instructions, any error is harmless in light of the vocational evidence. According

to the Dictionary of Occupational Titles ("DOT"), the jobs the vocational expert identified as performable by a person with Plaintiff's physical residual functional capacity all involve a Reasoning Level of 2.  See A.R. 365-66; see also DOT 706.684-022 (Assembler, Small Products I), 1991 WL 679050, at *1 (2016); DOT 222.687-022 (Routing Clerk), 1991 WL 672133, at *1 (2016); DOT 559.687-074 (Inspector and Hand Packager), 1991 WL 683797 (2016). Reasoning Level 2 requires an ability "[a]pply commonsense understanding to carry out detailed <u>but uninvolved</u> written or oral instructions."  See id. (emphasis added).  The Ninth Circuit has found that a limitation to "simple" or "repetitive" tasks is consistent with the ability to perform jobs with a Reasoning Level of 2.  See <u>Rounds v. Commissioner</u>, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) (collecting cases); see also <u>Lewis v. Berryhill</u>, 708 Fed. App'x 919, 920 (9th Cir. 2018) (finding that ALJ did not err in finding claimant could perform job requiring Level 2 reasoning where claimant was limited to "work involving simple instructions"); <u>Little v. Berryhill</u>, 708 Fed. App'x 468, 469-70 (9th Cir. 2018) (limitation to jobs with Level 2 reasoning or less is consistent with limitation to "simple directions"); compare <u>Zavalin v. Colvin</u>, 778 F.3d 842, 843-44 (9th Cir. 2015) (apparent conflict exists between limitations to "simple, routine or repetitive tasks" and "the demands of Level 3 Reasoning").

    Plaintiff cites to various GAF scores in the record which are lower than the GAF score Dr. D'Angelo assessed, and Plaintiff then argues that there existed a conflict between treating providers and Dr. D'Angelo that the ALJ assertedly should have resolved.  See

///

Plaintiff's Motion, pp. 5-9 (citing reported GAF scores of 38).[6]
However, the record contains no opinion from any treating provider
concerning Plaintiff's residual functional capacity. The GAF scores
Plaintiff cites are not dispositive on the issue of disability.
See Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) ("GAF
scores, standing alone, do not control determinations of whether a
person's mental impairments rise to the level of a disability (or
interact with physical impairments to create a disability"). The
Social Security Administration has indicated that GAF scores have no
"direct correlation to the severity requirements in the mental
disorder listings." See Revised Medical Criteria for Evaluating
Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. § 50746-01,
50764-65 (Aug. 21, 2000); see also McFarland v. Astrue, 288 Fed. App'x

---

[6] Plaintiff's social worker diagnosed a mood disorder, not otherwise specified, with a GAF of 38 as of November 8, 2013 (A.R. 549). Later medication management notes include a chart stating that Plaintiff had a GAF of 38 as of January 1, 2014 and October 1, 2015. See, e.g., 623, 661. A GAF score of 31–40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." See DSM, p. 34. On January 2, 2014, another social worker diagnosed a mood disorder, not otherwise specified, and cocaine-induced mood disorder with mixed features with onset during withdrawal, and assessed a current GAF of 41 (A.R. 546). A GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." See DSM, p. 34. A psychiatrist also evaluated Plaintiff on January 2, 2014, and diagnosed a mood disorder, not otherwise specified, with alcohol and cocaine dependence in remission, and assessed a current GAF of 60 (A.R. 562). A GAF score of 51 to 60 describes "moderate symptoms" or any "moderate difficulty in social, occupational, or school functioning." See DSM, p. 34.

357, 359 (9th Cir. 2008) (noting same).[7] To the extent the evidence of record concerning Plaintiff's alleged mental impairments is conflicting, the ALJ properly resolved the conflicts. See Treichler v. Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" to resolve conflicts and ambiguities in the record); Andrews v. Shalala, 53 F.3d at 1039-40 (court must uphold the administrative decision when the evidence "is susceptible to more than one rational interpretation").

The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform jobs existing in significant numbers in the national economy (A.R. 365-66). The ALJ properly relied on this testimony in denying disability benefits. See Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

**II. The ALJ Did Not Materially Err in Weighing the Medical Evidence.**

Plaintiff contends in a conclusory manner that the ALJ erred in failing to find Plaintiff's alleged mental impairments to be severe. See Plaintiff's Motion, p. 8. No material error occurred.

///

///

---

[7] The GAF scale was eliminated from the fifth edition of the DSM. The DSM no longer recommends using GAF scores to measure mental health disorders because of the scores' "conceptual lack of clarity . . . and questionable psychometrics in routine practice." See Olsen v. Commissioner, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) (quoting DSM 16 (5th ed. 2013)).

The ALJ found Plaintiff's depression to be a medically determinable mental impairment that does not cause more than minimal limitation in Plaintiff's ability to perform basic work activities (i.e. a "nonsevere" impairment). See A.R. 34. In so finding, the ALJ gave "great" weight to examining psychologist Dr. D'Angelo's opinion that Plaintiff has no more than mild mental limitations, as well as a good prognosis for continuing improvement (A.R. 33-34).

When, as here, a claimant is found to have at least one severe impairment, the ALJ is required to consider the functional effects of all impairments, severe and nonsevere. See Social Security Ruling 96-8p, *5 ("In assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). In the present case, while the ALJ found Plaintiff's alleged mental impairments to be nonsevere, the ALJ stated that Plaintiff's residual functional capacity assessment was based on a consideration of all of Plaintiff's symptoms (A.R. 34). Accordingly, the ALJ considered Plaintiff's medically determinable mental impairments in determining Plaintiff's residual functional capacity (and found no functional limitations). Thus, any error in failing to find Plaintiff's alleged mental impairments to be severe was harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding any Step 2 error harmless where ALJ considered the impairment at Step 4); see also Gray v. Commissioner, 365 Fed. App'x 60, 61-62 (9th Cir. 2010) (finding any Step 2 error harmless where ALJ considered nonsevere mental impairments in determining claimant's residual functional capacity).
///

**CONCLUSION**

For all of the foregoing reasons,[8] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 16, 2019.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court has considered and rejected all of Plaintiff's arguments. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration. See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).

[9] Plaintiff's counsel submitted to the Appeals Council a Residual Functional Capacity Questionnaire by Dr. Lichhan Zery dated January 29, 2018 – after the ALJ's adverse decision – suggesting that Plaintiff would have greater physical limitations than the ALJ found to exist. See A.R. 313-15 (assessing a residual functional capacity work closer to sedentary work than light work). To the extent Plaintiff's conditions may have worsened after the ALJ's most recent decision, nothing prevents Plaintiff from filing a new application based on new evidence. See Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 512 (9th Cir. 1987).